# 95 DTA 89

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL II DE BAYAMON
## PANEL I

AIRANGEL BERRIOS ZAYAS EN SU CARACTER PERSONAL Y EN REPRESENTACION DE LA SOCIEDAD LEGAL DE GANANCIALES CONSTITUIDA CON SU ESPOSA SONIA M. PEREZ COLLAZO; Y OTROS
Demandantes-Recurridos

v.

CARLOS M. BERRIOS EN SU CARACTER PERSONAL Y EN REPRESENTACION DE LA SOCIEDAD LEGAL DE GANANCIALES CONSTITUIDA CON SU ESPOSA WANDA GRISELLE MOLINA BERRIOS; Y OTROS
Demandados-Peticionarios

Núm. KLCE-95-00305

San Juan, Puerto Rico, a 23 de mayo de 1995

Panel integrado por su presidenta, Juez Ramos Buonomo y los Jueces Ortiz Carrión y Cordero

Cordero, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Los demandados-peticionarios (en adelante nos referiremos a los peticionarios como *"Don Carlos"*) ██ han recurrido ante nos mediante recurso de *certiorari* ██ acompañado con una *"Moción en Auxilio de Jurisdicción"*. ██ Por los fundamentos adelante explicados denegamos lo solicitado en ambos escritos.

### I

En su escrito Don Carlos hace referencia y un recuento de la larga trayectoria de quejas, querellas, problemas y litigios con los demandantes-recurridos, (en adelante, nos referiremos a los recurridos como *"Don Airangel"*). ██ No surge con claridad del récord ante nos el comienzo de estas disputas, pero ciertamente comenzaron antes del 1987. Veamos.

La Oficina Regional de Bayamón para la Administración de Reglamentos y Permisos *("ARPE")*, notificó el 30 de noviembre de 1988, su *"Informe Sobre Acuerdo Adoptado Por El Director Regional"*, en el caso número 87-40-E-958 BPA ██ Dicho informe indica que el acuerdo fue adoptado por el Director Regional en su reunión del 13 de octubre de 1988, donde éste autoriza el anteproyecto de construcción de una granja avícola sometido por Don Airangel. La autorización del anteproyecto fue claro en que:

*"6. Que el Director Regional autoriza el anteproyecto de construcción a tenor con las recomendaciones del oficial examinador que presidió la vista administrativa, siempre y cuando se cumpla con lo siguiente, previo a someter los planos finales.*

*"a. Obtener y someter endoso de todas las agencias concernidas, inclusive el Departamento de Agricultura y Conservación de Suelos.*

*"b. Cumpla con todos los requerimientos de la Junta de Calidad Ambiental.*

*"c. Cumpla con todas las recomendaciones de la Oficina de Revisión y Asesoramiento Ambiental.*

*"d. Cumpla con todas las medidas propuestas para evitar malos olores según comunicación del 14 de mayo de 1988."*

Según el informe, previo a la antes mencionada autorización comparecieron el 23 de febrero de 1988 siete (7) vecinos opositores a una vista celebrada por ARPE. En la primera página, párrafo 4(f) de dicho informe, se tomó nota de:

*"Que el padre del vecino opositor posee una granja similar a lo propuesto a aproximadamente 29 metros de lo propuesto."* ■

Don Carlos nunca apeló a su debido tiempo la autorización para el anteproyecto. (Véase *exhibit* 12, páginas 3-4, párrafos 5 y 6). Tampoco se inició por parte de Don Carlos procedimiento alguno de revocación del anteproyecto (Apéndice, *exhibit* 12, página 70, párrafo 8), pero ciertamente su oposición a la construcción y operación de la granja de Don Ariangel ha sido insistente e incesante hasta el día de hoy, como veremos.

A pesar de la oposición de Don Carlos, el 15 de junio de 1993 ARPE le concedió a Don Airangel permiso de construcción Núm. 93-40-E-204-BPC permitiendo la construcción de una estructura de acero para la crianza de pollos. A su vez Don Carlos, inconforme, apeló la concesión de dicho permiso a la Junta de Apelaciones sobre Construcciones y Lotificaciones *("JUNTA")*. Luego de vistas públicas donde compareció Don Carlos como opositor, la JUNTA, el 17 de septiembre de 1993, resolvió en contra de la posición de éste. Don Carlos solicitó revisión administrativa ante el entonces Tribunal Superior, Sala de Bayamón, Caso Civil Número DAC 93-0838 (802) pidiendo se revocara la decisión de la Junta.■ En su extensa y explicativa sentencia del 14 de abril de 1994 el Tribunal Superior confirmó la decisión de la JUNTA expresando:

*"La Junta fundamentó detalladamente su resolución en su interpretación de las leyes y reglamentos antes citados que compete administrar y poner en vigor por la agencia".* (Véase Apéndice, *exhibit* 12, página 74).

Ejerciendo su derecho al máximo, Don Carlos recurrió a nuestro Tribunal Supremo mediante *certiorari*, caso número CE-94-373, solicitando se revocara la decisión del Tribunal Superior. El día 11 de julio de 1994 nuestro Tribunal Supremo denegó la petición, citando a *Henríquez v. C.E.S.* 120 D.P.R. 194 (1987), y señaló que:

*"....las decisiones administrativas, interpretativas de las leyes y reglamentos pertinentes y aplicables, gozan de deferencia."* (Véase Apéndice, *exhibit* 14, página 79).

Don Carlos presentó una querella (número Q-93-013) ante el entonces Tribunal Municipal, Sala de Corozal,■ intentando revisión de las decisiones administrativas ya resueltas por la Junta, y confirmadas por el Tribunal Superior y por el Tribunal Supremo. Obviamente, el Tribunal Municipal correctamente se declaró sin jurisdicción para intervenir en lo pedido por Don Carlos. (Apéndice, exhibit 17, página 85).

Al poco tiempo, recurre nuevamente Don Carlos ante el Tribunal Municipal, Sala de Corozal (Querella Número EPD-94-283), esta vez querellándose de perturbaciones, citando como fuente de jurisdicción la Ley Número 140 de 1974, Artículo 2 (J), 32 L.P.R.A. 2872.■ En esta ocasión Don Carlos aseveró que la operación de la granja de Don Airangel emana malos olores y/o pestilencias, desechos de aves tales como plumas, polvo y pestilencias.■ El Tribunal Municipal, Sala de Corozal, recibió prueba, principalmente de la inspectora del Departamento de Salud Ambiental de Corozal y a base de dicha prueba resolvió que *"...sí, existen perturbaciones que afecten al querellante y a sus familiares que no están contempladas en el Plan de Manejos Fecales, pero que son productos del incumplimiento de*

*las medidas establecidas para evitar los malos olores, polvo y plumas."* Resolvió además el Tribunal Municipal, Sala de Corozal, que procedía fijarse bajo apercibimiento de desacato civil si se violara lo ordenado, un estado provisional de derecho que obligaría a Don Airangel de inmediato a cubrir *"los laterales del rancho con toldos y los mantendrá subidos para evitar que el viento entre y pueda levantar polvo y plumas."* Don Airangel alega no poder cumplir con dicha orden ya que esto causaría la muerte de 30,000 aves, lo que significaría la destrucción de su negocio. (Apéndice, *exhibit* 1, página 10).

La guerra legal entre Don Carlos y Don Airangel sigue, pero esta vez mueven el campo de batalla desde el Tribunal Municipal, Sala de Corozal al Tribunal Superior, Sala de Bayamón (Caso Número DPB-94-0506 (505)) en donde Don Airangel radicó su demanda por daños y perjuicios, sentencia declaratoria e interdicto. Don Carlos, a su vez, radicó reconvención reclamando daños y perjuicios y solicitando que se mantenga en vigor y en forma permanente el interdicto provisional ordenado por el Tribunal Municipal. Don Carlos también alega en su reconvención que el polvo y las plumas le han provocado a él y a su familia problemas respiratorios a consecuencia de la granja operada por Don Airangel. La Sala de Bayamón respondiendo a *"Una Moción Urgente De Remedios Provisionales Al Amparo De La Regla 56 De Procedimiento Civil"* presentada por Don Airangel, señaló vista con preferencia en su calendario. Instancia comenzó las vistas y ésto nos trae al día de hoy.

Luego de este caso estar ante el Tribunal Superior, Sala de Bayamón, el Tribunal Municipal, Sala de Corozal, dejó sin efecto su orden de *"Estado Provisional de Derecho"* erróneamente entendiendo que el Tribunal Superior, Sala de Bayamón, en su orden del 13 de diciembre de 1994 dejó sin efecto dicho estado provisional (Apéndice, *exhibit* 25, página 100). Una lectura de la referida orden del 13 de diciembre de 1994 (Apéndice, exhibit 26, página 101) no dice lo entendido por el Tribunal Municipal, y en todo caso no tenía dicho Tribunal Municipal jurisdicción para actuar en la misma disputa entre las partes por estar la controversia ante un tribunal de mayor jerarquía.

Luego de comenzadas las vistas y llegado su turno para presentar prueba, Don Carlos, el 8 de mayo de 1995 recurre ante este Tribunal mediante *certiorari* dándonos un historial de los casi diez (10) años de disputa entre las partes y quejándose, con un grado extremo de falta de claridad, de que el Tribunal de Primera Instancia, Sala Superior de Bayamón había dejado sin efecto el estado de derecho provisional emitido por el Tribunal Municipal, Sala de Corozal, que la demanda presentada por Don Airangel es frívola, que el tribunal de instancia continuaba con las vistas, y que le había declarado no ha lugar a su solicitud de sentencia sumaria. Con su recurso de *certiorari* Don Carlos radicó una Moción en Auxilio de Jurisdicción para que se paralicen los procedimientos ante el Tribunal de Primera Instancia.

## II

Es obvio que el primer error citado por Don Carlos señalando que Instancia dejó sin efecto el estado provisional no existe. El tribunal de instancia ha sido claro en que no ha dejado sin efecto el interdicto preliminar impuesto por el entonces Tribunal Municipal, Sala de Corozal. De existir alguna violación a dicho interdicto por parte de Don Airangel, como alega Don Carlos, el foro de instancia está en mejor posición para recibir prueba al efecto. De haberse violado el interdicto preliminar, el tribunal sentenciador tiene pleno poder para imponer las sanciones correspondientes. Dicho ésto, hacemos claro que no estamos emitiendo opinión alguna sobre si se debe dejar en vigor, modificar o eliminar el interdicto preliminar. El foro de instancia tiene plena facultad para recibir prueba a estos efectos durante las vistas que están ahora señaladas para los próximos días. Los juzgadores de hechos merecen respeto y confiabilidad en la solución justiciera de los conflictos, en la evidencia a recibirse y en la apreciación imparcial de la prueba. *Pueblo v. Nevárez,* 101 D.P.R. 11, 17 (1973).

Tampoco cometió error alguno la corte inferior al denegarle la sentencia sumaria a Don

Carlos. Existen múltiples disputas de hechos, entre ellas, la primordial; o sea si es cierto que existen perturbaciones que afectan la salud y el bienestar de Don Carlos y la de sus familiares a consecuencia de las operaciones de la granja, o si existen otras razones que pudiera una persona razonable entender que provocan a los aquí peticionarios a montar una cruzada legal irresponsable en contra de los aquí recurridos. Bajo tales conflictos de hechos materiales y relevantes, es totalmente improcedente una sentencia sumaria; véase Regla 36.3, Reglas de Procedimiento Civil de 1979, *Caquías Mendoza v. Asoc. de Residentes de Mansiones de Río Piedras,* ___ D.P.R.___ (1993), **93 J.T.S. 127,** página 11079, y casos ahí citados.

Don Carlos señala como próximo error que no se paralizaron los procedimientos según él le había pedido al tribunal de instancia, indicando que el continuar con las vistas ante ese tribunal le *"requieren la presencia de sendos y costosos peritos"* para probar los *"obvios daños que le están ocasionando a la parte demandada y su familia la operación de la mal ubicada granja del demandante y así, entendemos que nos van a indicar que no nos asiste la razón."* (Énfasis nuestro.) Véase Moción Urgente Solicitando Auxilio de Jurisdicción..., pagina 2, párrafo 5. En esa forma Don Carlos infiere, por no decir acusa, que el Tribunal de Primera Instancia, ha actuado con parcialidad y que ha pre-juzgado el caso en su contra. Hemos examinado el expediente ante nos minuciosamente y no hemos encontrado la más mínima evidencia de que tal sea el caso. Al contrario, de los *exhibits* y las minutas de las vistas que hasta ahora se han llevado a cabo, vemos que el tribunal de instancia ha ventilado el caso correctamente sin favorecer a ninguna de las partes. Le advertimos a los aquí peticionarios y a sus abogados que se eximan de hacer tales alegaciones en el futuro, a menos que no tengan una prueba fuerte y robusta para apoyar tales manifestaciones. El Tribunal Supremo ha advertido que los abogados deben abstenerse de levantar imputaciones de parcialidad contra el magistrado que preside un juicio salvo cuando gocen de la certeza o el conocimiento claro y seguro sobre lo que se asevera. *In re: Cardona Álvarez,* 116 D.P.R. 895, 906-907 (1986). De lo contrario, no vacilaremos en imponerle sanciones severamente costosas a las partes y a sus abogados cuando se hacen alegaciones de parcialidad en contra de un juez sin estar las mismas apoyada por prueba específica de parcialidad o patente apariencia de la misma. *Pueblo v. Martés Olán,* 103 D.P.R. 351, 356 (1975). Es obvio, además, que una parte tiene que probar su caso, y que todo litigio conlleva gastos. Don Carlos, al igual que Don Airangel, tienen que incurrir en sus propios gastos para defenderse y para probar lo alegado en sus respectivas demandas.

Finalmente, los peticionarios infieren que por ellos haber radicado el presente recurso de *certiorari* ante este Tribunal se deben paralizar los procedimientos ante instancia. La mera presentación de un recurso de *certiorari* de una orden, resolución o providencia judicial interlocutoria, nunca podrá servir como base para paralizar o demorar los procedimientos al nivel de instancia, a menos que este Tribunal así lo disponga mediante orden al efecto. (Véase el art. 4.002 de la Ley de la Judicatura de Puerto Rico de 1994, Ley Núm. 1 del 28 de julio de 1994 y la Regla 20 del Reglamento del Tribunal de Circuito de Apelaciones). De hecho, tratándose de un *certiorari* de una orden interlocutoria este Tribunal no paralizará ningún procedimiento a menos que no existan circunstancias extraordinarias, las cuales no están aquí presentes.

### III

POR LOS FUNDAMENTOS antes expuestos, se deniega el recurso de *certiorari.* Notifíquese esta sentencia por fax y por la vía ordinaria.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.

María de la C. González Cruz
Secretaria General

## ESCOLIOS 95 DTA 89

**1.** Entendiéndose que éste representa la posición de todos los demandados-peticionarios.

**2.** De los escritos y documentos radicados con el presente recurso de *certiorari*, este Tribunal entiende que existen circunstancias especiales debidamente sustentadas para recibir la petición, a pesar de no habérsele dado cumplimiento estricto al término de treinta (30) días desde la notificación de las órdenes interlocutorias aquí objetadas, emitidas por el Tribunal de Primera Instancia. Véase Regla 18 (B) (2) (b), Reglas del Tribunal del Circuito de Apelaciones.

**3.** Mediante Resolución y Orden de 16 de mayo de 1995 se declaró sin lugar la Moción en Auxilio de Jurisdicción, notificada la misma por teléfono ese mismo día, y luego por la vía ordinaria.

**4.** Entendiéndose que éste representa la posición de todos los demandantes-recurridos.

**5.** Véase dicho informe *exhibit* 13, página 76 del Apéndice de la petición ante este Tribunal.

**6.** Notamos, además, que en la demanda (Apéndice, *exhibit* 1, página 1, párrafo 3) que ahora se ventila ante instancia (Civil DPE 94-0506), se alega que el padre de Don Carlos, Wilfredo Berríos, es dueño de una granja avícola que queda a unos 29 metros de la granja de Don Airangel.

**7.** A través de esta sentencia usaremos el antiguo nombre del Tribunal Superior, Sala de Bayamón por haberse instado esta acción ante esa sala antes de que entrara en vigor la Ley de la Judicatura de Puerto de Rico de 1994, Ley Núm. 1 de 28 de julio de 1994.

**8.** También, usaremos el antiguo nombre del Tribunal Municipal, Sala de Corozal, por haberse presentado la querella ante esa sala antes de que entrara en vigor la Ley de la Judicatura de Puerto Rico de 1994, *supra*.

**9.** Dicha ley lee:

*"Mediante la presente los magistrados quedan facultados a intervenir, investigar, ventilar y resolver provisionalmente controversias a solicitud de parte interesada, según el trámite dispuesto en este Capítulo.*

**\*\*\*\*\*\*\*\*\*\***

*"(J) Controversias en las cuales se alegue la existencia de perturbaciones que fueren perjudiciales a la salud o a los sentidos, o que interrumpan el libre uso de la propiedad, de modo que impidan el cómodo goce de la vida o de los bienes, de las que dan lugar a una acción bajo la sec. 2761 de este título, conocida como Ley sobre Perturbación o Estorbo."*

**10.** Del récord ante este Tribunal no aparece que Don Carlos en momento alguno se haya querellado de la otra granja que aparentemente opera su padre a unos 29 metros de la propiedad de Don Airangel, a pesar de esta granja estar operándose desde antes del 1987.

**11.** En todo caso, el hoy Tribunal de Primera Instancia, Sala Superior de Bayamón, en su orden notificada el 8 de marzo de 1995 (Apéndice, *exhibit* 7, página 55) expresó claramente que sigue vigente el interdicto preliminar.